**CINCINNATI (City), Plaintiff, v. FAIG, Defendant.**

Cincinnati Municipal Court, Criminal Division.

No. 93676.   Decided September 11, 1957.

Henry M. Bruestle, City Solicitor, James W. Farrell, Jr., Deputy City Solicitor, Ralph E. Cors, Asst. City Pros., for City of Cincinnati.
Carl L. Meier, for defendant.

## OPINION

By KEEFE, J.

The defendant herein is charged by affidavit filed July 22, 1957, with failure to file a tax return with the Tax Commissioner of the City of Cincinnati in violation of Section IV of Ordinance No. 67—1955 entitled "City of Cincinnati Earned Income Tax Ordinance."   This section provides:

"RETURN AND PAYMENT OF TAX.   Each taxpayer who engages in business or whose salary, wages, commissions, or other compensation are subject to the tax imposed by this ordinance shall, whether or not a tax be due thereon, make and file a return on or before April 30, 1956, with the Tax Commissioner, on a form prescribed by and obtainable from the Tax Commissioner, setting forth the aggregate amount of salaries, wages, commissions, and other compensation earned by him, and gross income from such business less allowable expenses incurred in the

acquisition of such gross income during the tax period and subject to said tax, together with such other pertinent information as the Tax Commissioner may require; provided, however, fiscal year taxpayers shall file a return for each of their fiscal years part of which fall within the tax period within one hundred and twenty (120) days after the close of each fiscal year . . ."

(This is not the entire section, but the portion quoted is adequate for the purposes of this opinion.)

The warrant was served upon the defendant at his place of employment, The Robert A. Taft Sanitary Engineering Center, 4676 Columbia Parkway, Cincinnati. The defendant resides in Groesbeck, Ohio, in Hamilton County, outside the limits of Cincinnati, and did so in 1955. He has been employed by the Federal Government for more than ten years. His base of operations has been the Engineering Center in Cincinnati and he is paid there although he is frequently required to perform duties outside Cincinnati and Hamilton County.

The case came on for trial by the Court sitting as both judge and jury, no jury trial having been demanded. Defendant was entitled to a jury had it been requested. Before trial, the defendant, through counsel, demurred to the affidavit claiming the facts stated in it do not constitute an offense punishable by law. After oral argument, defendant asked that all his rights under the demurrer be conserved but that the case proceed to trial. Defendant pleaded not guilty and trial was had. Briefs have been filed. Defendant has at all times admitted his failure to file a 1955 tax return.

The Taft Engineering Center is within the corporate limits of Cincinnati. Judicial notice is taken of that fact and that the structure is completely surrounded by the City of Cincinnati. There has been no attempt by the defendant to show that the land upon which the Engineering Center is located was ever ceded by the State of Ohio to the Federal Government. It is doubted if such a showing could convincingly be made, but regardless there is no proof of cession.

These questions are before us:

1. Is the provision of the 1955 Cincinnati Earned Income Tax Ordinance which permits prosecution for violation of the ordinance to be brought within ten years after the violation constitutional?

2. Is the imposition of the Earned Income Tax Ordinance upon a non-resident of the City who is employed by the Federal Government under the circumstances existing for the defendant herein constitutional?

The questions are considered in their numerical order. The defendant's position is that the action herein should have been commenced within one year after April 30, 1956, pursuant to §1905.33 R. C. Actually the affidavit charging defendant was filed about ninety days longer than one year. The Tax Ordinance itself provides for prosecution within ten (10) years after the occurrence of the violation. In support of his contention, defendant cites the case of **City of Toledo v. Schudel, 90 Oh Ap 55.** The state statute was held to control in that case because there was no limitation by ordinance. Furthermore, the Toledo Charter itself

provided that the statute controlled when the Charter was silent, as was the fact, and there was no ordinance provision. The Court in the Schudel case definitely was not faced with the same set of facts present here.

The cases of City of Youngstown v. Evans, 121 Oh St 342 and Stary et al v. City of Brooklyn et al, 162 Oh St 120 provide adequate bases for our determination that the provision of the Cincinnati Ordinance allowing ten (10) years for prosecution is valid, enforceable and in no way unconstitutional. These cases both are authority for the proposition that municipal ordinances may provide greater penalties for crimes than authorized by state statute. If municipalities may provide greater penalties, logic certainly requires that they may provide for longer periods of time within which misdemeanors may be prosecuted so long as the municipal legislation does not transcend the limits of reasonableness. The ten year statute of limitations in the Cincinnati Ordinance is neither unreasonable nor arbitrary. The provision is concerned with local self government and home rule and in no way conflicts with the general laws of the State of Ohio.

It is contended that imposition of the Cincinnati Earned Income Tax upon this defendant is unconstitutional and to establish this position great reliance is placed upon a decision of the United States Supreme Court in the case of Wisconsin v. J. C. Penney Co., 311 U. S. 435 (1940). This Court cannot subscribe to the contention that the decision in the Penney case is a compelling authority for holding the Cincinnati tax invalid as to the defendant herein. Quoting from the language of our own Supreme Court of Ohio in Angell v. Toledo, 153 Oh St 179, the majority opinion stated that the Penney Co. case stands for the proposition

"that the test of whether a tax law violates the due process clause is whether it bears some fiscal relation to the protections, opportunities, and benefits given by the State, or, in other words, whether the state has given anything for which it can ask a return." (Emphasis mine.)

Of course, the Federal Government itself in its operation of the Engineering Center in Cincinnati is immune, as it always is, from municipal taxation. However, those living in, working at, or otherwise present on the property of the Center do not in their individual capacities enjoy the same immunity as the Federal Government. Furthermore, two enactments by the Congress of the United States create an atmosphere of taxability for such federal employees as the defendant herein. These are the Public Salary Tax Act, 5 U. S. Code Section 84a, providing that a state or municipality can tax income earned and other compensation from the Federal Government, and the Buck Act, 4 U. S. Code Sections 105-110, allowing states and municipalities to tax those residing or working in areas over which the Federal Government has exclusive jurisdiction in the same manner as if the property involved were not a Federal area.

As has been already pointed out, there is no proof that the land on which the Engineering Center is located has ever been ceded to the Federal Government. However, assuming that it had been so ceded by

Ohio to the Federal Government and the Federal Government has exclusive jurisdiction over it, nevertheless in the light of the two Congressional enactments named, and the reasoning of the Ohio Supreme Court in the Angell Case and the decision of the United States Supreme Court in Howard v. Commissioners of Sinking Fund of City of Louisville, 344 U. S. 624, decided in 1953, the Income Tax Ordinance of Cincinnati with which we are concerned in this prosecution is completely valid with reference to this defendant.

The Angell case stands clearly for the proposition that a municipal income tax is a valid enactment in Ohio even as to non-residents of the municipality. The defendant in this case is not a resident of Cincinnati. With reference to the status of a Federal Area wholly within a municipality the United States Supreme Court in the Howard case says:

"The City (Louisville) can levy such a tax (income tax) within its boundaries outside the federal area. By virtue of the Buck Act, the tax can be levied and collected within the federal area, just as if it were not a federal area. Since the area is within the boundaries of the City of Louisville, and this tax is an income tax within the meaning of the Buck Act, the tax is valid." (Emphasis mine.)

A final word about the benefits derived by defendant from the City in exchange for his payment of the tax. At the trial it was developed that the City does not inspect the buildings at the Engineering Center, does not inspect the cafeteria maintained and operated in the Center, and does not collect waste from the Center. But it was shown that the defendant travels to and from his place of employment at the Center on the streets and highways maintained, patrolled and protected by the City of Cincinnati. There was no evidence concerning the existence of any separate police authority at the Center thus making it reasonable and logical to assume that in the event of the need for police services they would be provided by the City. Neither was there evidence of a separate fire department at the Center, but it is judicially noticed by this Court that in the event of a consequential fire or explosion at the Center the services of the Cincinnati Fire Department would be required not only to provide protection for the Center and its occupants but to obviate injury and damage to persons and residents adjacent to the Center.

In 1943 the Supreme Court of Pennsylvania spoke words of logic and conviction in Kiker v. City of Philadelphia et al, 346 Pa. 624, 31 A 2d 289, a case containing facts almost identical to those present here. Involved was a Philadelphia income tax as it applied to a New Jersey resident employed by the Federal Government at the Philadelphia Navy Yard on League Island, a tract of land in Philadelphia. Plaintiff therein sought to restrain the enforcement of the tax ordinance of the City of Philadelphia. We adopt the following language of that court as part of this opinion:

"Plaintiff (the non-resident taxpayer) may at "all times use the streets, bridges and other facilities of the City, and also has the benefit of protection of its police and fire departments when engaging in business or pleasure in that municipality, as well as many other advantages. It is common knowledge that the City of Philadelphia cuts all ice, and

keeps the Delaware River navigable from the northern limits of the City to Chester, where in the winter months navigation would otherwise be closed, making possible to plaintiff the transportation he uses to go to and return from League Island to his home in New Jersey. This is decidedly a benefit to him . . . . Therefore we are convinced that the tax does not violate the Fourteenth Amendment of the Federal Constitution that all the benefits of the facilities of Philadephia are legally available to plaintiff, and he has no just reason to complain of the tax."

The Earned Income Tax Ordinance is a valid enactment as it refers to this defendant who is found guilty as charged.