**UNITED STATES of America,**
**Plaintiff,**

v.

**LEWISBURG AREA SCHOOL DIS-**
**TRICT, UNION COUNTY, PENN-**
**SYLVANIA, et al., Defendants.**

Civ. No. 75–678.

United States District Court,
M. D. Pennsylvania.
June 10, 1975.

John J. McCarthy, Chief Gen. Litigation Section and Charles E. Stratton, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Louise O. Knight, Graham C. Showalter, Paul W. Brann, Lewisburg, Pa., for defendants.

OPINION

MUIR, District Judge.

The United States, at the request of the United States Bureau of Prisons, instituted this action on June 10, 1975 seeking a declaration that the United States Constitution and laws of the United States prohibit the imposition of certain taxes on federal employees and their dependents who reside on the federal enclave known as the Lewisburg Federal Penitentiary. The complaint also seeks preliminary and permanent injunctions against the assessment and collection of those taxes from the residents of the enclave. The taxes in question are the Lewisburg Area School District occupation and per capita taxes and the Union County per capita tax.

All the Defendants filed motions to dismiss. The facts have been stipulated. The taxes in issue are authorized by the Pennsylvania Act of 1965, P.L. 1257, §§ 1 through 24, 53 P.S. § 6901 et seq. For purposes of the occupation tax, each individual residing within the Lewisburg Area School District is assessed on the basis of his occupation. A given millage rate is then applied to that assessment in order to determine the amount of occupation school tax owed by the individual. (There is no stipulation of fact with respect to the prevailing millage rate). An assistant warden is assessed at $500.00. Other federal employees are assessed at varying amounts depending upon their particular job skills. A housewife is assessed at $30.-00. The challenged per capita taxes are $5.00 taxes imposed by the Lewisburg Area School District and by Union County.

The United States contends that the Defendants have no jurisdiction to tax the residents of the Federal enclave because exclusive jurisdiction over the Lewisburg Federal Penitentiary is vested in the United States of America. The first issue which the Court must address is the Defendants' contention that the United States does not have "standing" to bring this action.

■■ For purposes of standing the party seeking relief must have such a personal stake in the outcome of the controversy that the concrete adverseness which courts rely upon for the illumination of difficult Constitutional questions is assured. *United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Schlesinger v. Reservists*

*Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The United States claims that its direct interest in this litigation is the protection of the integrity of the Federal enclave at Lewisburg and the prevention of encroachments by states upon its sovereign functions. The Court, however, fails to perceive a nexus between the personal taxes in question and an infringement on the sovereignty of the United States. The taxes fall directly on individuals living on the enclave and are not absorbed in any way by the United States. Many of the individuals living on the enclave, such as spouses, are not even employed by the United States and, in fact, some are employed outside the enclave. Conversely, many employees of the United States Bureau of Prisons in Lewisburg do not live on the enclave and are subject to the taxes in question but nevertheless are not among those individuals sought to be protected in this suit. Thus, given the absence from this suit of large numbers of Bureau employees, any allegation that the taxes shackle the operations of the United States Bureau of Prisons at Lewisburg is hollow. The Court is aware that in a suit by the individuals directly affected by the tax, the constitutional issue would be the same, i. e., whether persons residing on a federal enclave are immune from these particular taxes. However, the United States is not the party most interested in the outcome of that issue. The most interested parties are the individuals living on the Lewisburg reservation themselves. 28 U.S.C. § 1345[1] and the cases relied upon by the Government require that there be some sovereign interest or activity which the United States is entitled to protect and thus entitled to bring the litigation in question. The Government could not institute civil actions on behalf of government employees which arise out of incidents wholly unconnected to their status as government officials. Similarly, in this case the Court cannot conceive of any practical impact which the taxes in question have on the operation of the federal government and, consequently, cannot understand its interest in bringing this suit other than as a perquisite to certain Bureau of Prisons employees. Parenthetically, the Government should be interested in seeing that its employees whose salaries are funded from federal taxes pay their fair share of local taxes. The Court holds that the United States is without standing to institute this action.

Even assuming that the United States has standing, the Court finds that the taxes in question are validly imposed.

 The United States came into possession of the area which now constitutes the Lewisburg Federal Penitentiary by virtue of the Pennsylvania Act of 1931, P.L. 7, No. 4, § 3, 61 P.S. § 355 which is set out in the margin.[2] The text of that Act does not on its face cede the power of the Commonwealth to tax individuals residing on the land over which the United States received exclusive jurisdiction. It is the United States' contention that its acquisition of this land under Article I, § 8, Clause 17

---

1. "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

2. "Exclusive jurisdiction over the land so purchased, and to be purchased, is hereby ceded to the United States by the Commonwealth of Pennsylvania, and said lands shall be exempt from the payment of all taxes, state and local: Provided, That the Commonwealth of Pennsylvania shall retain concurrent jurisdiction with the United States over the lands so acquired by the United States, as far as necessary, for the purpose of serving all civil and criminal processes which may be issued under the authority of the Commonwealth in causes arising without the area so acquired."

of the Constitution,[3] precludes any attempts by the Commonwealth or its subdivisions to tax individuals residing on the federal enclave. However, Clause 17 contains no express requirement that a cession of land must be made without reservations by the ceding state and such a requirement is not to be implied. *James v. Dravo Contracting Company,* 302 U.S. 134, 148, 58 S.Ct. 208, 82 L.Ed. 155 (1937). On the contrary, *James* emphasizes the freedom and authority of the states to qualify their cessions of jurisdiction. Consequently, the Court finds nothing improper in narrowly interpreting this cession statute as to the exemption from tax which was granted by it. Pennsylvania's power to tax in the Lewisburg enclave was abated only with respect to lands and buildings but not with respect to individuals who may take up residence on the ceded land.

Of course, if the challenged taxes imposed under such a reservation of authority to tax have the effect of subjecting possessions, institutions, or activities of the Federal Government *itself* to state taxation, they are invalid. *McCulloch v. Maryland,* 4 Wheat. 316, 4 L. Ed. 579 (1819); *United States v. Tax Commission of Mississippi,* 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975). Since the Court finds no effective infringement on any aspect of the functions of the United States Bureau of Prisons at Lewisburg, it holds that the taxes in question are valid.

■ The Court also is of the view that the occupation tax in question is an "income tax" for purposes of the Buck Act, 4 U.S.C. §§ 104–110 and, consequently, may be validly imposed on the residents of the federal enclave at Lewisburg. In particular, § 106 states that no person shall be relieved from liability for any "income tax levied by any State, or by any duly constituted taxing authority therein, . . ." by virtue of that person's residing within a federal area. The Court is aware that the occupation tax is not a classic income tax. It does not vary for each individual taxpayer strictly according to the individual's income. However, the occupational assessments upon which the taxes are based do vary according to job type and are obviously intended to reflect roughly the potential income of the occupation being assessed. Since the Buck Act was passed to correct anomalous situations where some persons of the same class escaped taxation by reason of their living within a federal area and to recognize the states' generosity in ceding lands to the Federal Government, *Kiker v. City of Philadelphia,* 346 Pa. 624, 31 A.2d 289 (1943), certiorari denied, 320 U.S. 741, 64 S.Ct. 41, 88 L.Ed. 439 (1943), this Court is of the view that the Act should be read broadly. So reading the Act, the Court finds that the Lewisburg Area School District occupation tax is an "income tax" for purposes of the Buck Act and that the United States has waived any immunities which may exist with respect to the tax for individuals residing at the Lewisburg Federal Penitentiary.

The Court finds it unnecessary to reach those issues not already discussed and which were raised by Defendants including failure to exhaust state remedies and the necessity for a three-judge court.

This opinion shall constitute the Court's conclusions of law.

An appropriate order will be entered.

## ORDER

The motion of the Defendants to dismiss is granted.

---

3. "The Congress shall have the Power . . .

"To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."