**Application of George E. THOMPSON for Writ of Habeas Corpus.**

**No. M-1885.**

United States District Court
E. D. Pennsylvania.

Dec. 3, 1957.

Alexander S. Bauer, Philadelphia, Pa., Landon G. Dowdey, John J. O'Doud, Washington, D. C., for petitioner.

Thomas A. Masterson, Leonard B. Rosenthal, Asst. City Solicitors, Philadelphia, Pa., for the City.

VAN DUSEN, District Judge.

Petitioner, a civilian employee at the Philadelphia Naval Shipyard (hereinafter called "Shipyard") and a resident of New Jersey, seeks a writ of habeas

corpus to secure his release from the custody of a Philadelphia Deputy Sheriff who seized him at the Shipyard pursuant to a writ of capias ad respondendum issued by the Philadelphia Municipal Court. The capias writ was issued to recover fines and penalties totaling $700,[1] imposed for failure of petitioner to file a return and pay a tax of 1¼%[2] on his wages earned at the Shipyard, within Philadelphia, for the seven years 1950 to 1956, inclusive. The writ directs that the Sheriff detain the petitioner so that he will appear in court to answer the demand for payment of the fines and penalties unless the petitioner gives bail or makes deposit.[3] The record discloses that the bail fixed in such case varies with the circumstances, but is frequently $100 to $300 and, on occasions, alleged taxpayers such as petitioner have been released on common bail, "without putting up any security whatever."[4] There is no allegation in the petition that petitioner is unable to furnish bail, and his alleged fear that he might be unreasonably detained in spite of such bail (Par. 4 of Petition, as amended) is not supported by the fair preponderance of the evidence in this record.[5] Furthermore, the petitioner will have an opportunity to arrange for bail prior to the entry of the order of this court, returning him to the custody of the Sheriff of Philadelphia County.

The hearing judge has concluded that the respondent's (City's) Motion to Dismiss must be granted for these reasons:

*1. This court should not exercise its discretion to grant the writ at this time under the circumstances of this case.*

At least as early as 1886, the Supreme Court of the United States has emphasized that a federal court should not exercise its discretion to grant a writ of habeas corpus to free a person held in State custody where such person has not exhausted the remedies available to him in the State courts. See Ex parte Royall, 1886, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868. In that case, the court said, 117 U.S. at pages 250–251, 6 S.Ct. at page 739.

"But it is not alleged, and it does not appear, in either case, that he is unable to give security for his appearance in the state court, or that reasonable bail is denied him, or that his trial will be unnecessarily delayed. The question as to the constitutionality of the law under which he is indicted must necessarily arise at his trial under the indictment, and it is one upon which, as we have seen, it is competent for the state court to pass. Under such circumstances, does the statute imperatively require the circuit court, by writ of habeas corpus, to wrest

---

1. The fines were assessed at the rate of $100 for each of the years 1950–1956, inclusive (see paragraph 6 of affidavit attached to petition). 12 P.S. §§ 171, 182, 186, 201–203, 211 and 221 ff. provide for the institution of suit by issuance of a capias. 12 P.S. § 257 permits arrest on civil process in actions for fines or penalties.

2. The rate was increased to 1½% as of 1/1/57. See Philadelphia Code, 19–1500 ff. for terms of the Ordinance imposing the tax.

3. In this amicable action, the petitioner (who was brought, pursuant to an order of this court granting the writ of habeas corpus for the purpose of testifying only, to the United States Court House in Philadelphia, where argument was held on the Petition for the Writ of

Habeas Corpus) was released in the custody of his attorney until ruling on the legal questions by the court (see Document No. 2 in Clerk's file).

4. See page 1 of affidavit of Maurice Mordell, Esq., dated 10/31/57 (document No. 7 in Clerk's file). Although page 3 of petitioner's reply brief filed 11/27/57 alleges that petitioner would be imprisoned under the writ for almost a month in default of $300 bail, the record does not support this allegation. See, for example, copy of writ attached to petition, which does not mention the amount of bail.

5. Cf. document attached to "affidavit In Re Amendment to Petition for Habeas Corpus," received on 11/1/57 with Affidavits attached to Motion to Amend Petition filed 10/21/57.

the petitioner from the custody of the state officers in advance of his trial in the state court? We are of opinion that while the circuit court has the power to do so, and may discharge the accused in advance of his trial if he is restrained of his liberty in violation of the national constitution, it is not bound in every case to exercise such a power immediately upon application being made for the writ. We cannot suppose that congress intended to compel those courts, by such means, to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in state courts exercising authority within the same territorial limits, where the accused claims that he is held in custody in violation of the constitution of the United States. The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require' does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." [6]

The Court concluded, 117 U.S. at pages 252–253, 6 S.Ct. at page 741:

"That these salutary principles may have full operation, and in harmony with what we suppose was the intention of congress in the enactments in question, this court holds that where a person is in custody, under process from a state court of original jurisdiction, for an alleged offense against the laws of such state, and it is claimed that he is restrained of his liberty in violation of the constitution of the United States, the circuit court has a discretion whether it will discharge him upon habeas corpus, in advance of his trial in the court in which he is indicted; that discretion, however, to be subordinated to any special circumstances requiring immediate action." [7]

■ The principle established in Ex parte Royall, supra, has been consistently followed by the Supreme Court of the United States since that opinion was

---

6. The Court went on to say, 117 U.S. at page 252, 6 S.Ct. at page 740:

"The Circuit Court was not at liberty, under the circumstances disclosed, to presume that the decision of the state court would be otherwise than is required by the fundamental law of the land, or that it would disregard the settled principles of constitutional law announced by this court, upon which is clearly conferred the power to decide ultimately and finally all cases arising under the constitution and laws of the United States. * * * And in Covell v. Heyman, 111 U.S. 176, 182, 4 S.Ct. 355, 28 L.Ed. 390, it was declared 'that the forebearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States it is something more. It is a principle of right and of law, and therefore of necessity.' "

7. There are no "special circumstances requiring immediate action" in this record. This does not involve the issue of federal law enforcement officials or military officials in State custody for acts done in the performance of their federal duties, such as In re Neagle, 1890, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55; In re Ladd, D.C.D.Neb.1896, 74 F. 31. Petitioner's failure to pay his local taxes was not part of his duties as a civilian employee of the Federal Government and the incidental interference with federal business caused by the service of this State court writ does not constitute such "special circumstances." See United States ex rel. Kennedy v. Tyler, 1925, 269 U.S. 13, 17, 46 S.Ct. 1, 70 L.Ed. 138.

filed. See Ex parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; cf. Stefanelli v. Minard, 1951, 342 U.S. 117, 120, 72 S.Ct. 118, 96 L.Ed 138.[8]

There is nothing in the legislative history of the 1948 Amendment to the habeas corpus provisions of the United States Code (see 28 U.S.C.A. § 2254) which suggests that Congress intended to require federal courts to issue writs of habeas corpus prior to the exhaustion of State remedies in a case such as this.[9] See "Limiting the Abuse of Habeas Corpus," by Hon. John J. Parker, 8 F.R.D. 171; Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761.

The writ of habeas corpus is available to petitioner under the law of Pennsylvania. See 12 P.S. §§ 1871, 1888, 1873, and 1879. Since the Supreme Court of the United States has already declined to review a Pennsylvania appellate court decision which appears to have raised the arguments presented by petitioner, he should be required to clearly present his federal arguments to the State courts and by petition for writ of certiorari to the Supreme Court of the United States before this court should act. In City of Philadelphia v. Cline, 1945, 158 Pa.Super. 179, 44 A.2d 610, certiorari denied sub. nom. Barnes v. City of Philadelphia, 1946, 328 U.S. 848, 66 S.Ct. 1120, 90 L.Ed. 1621, the petitioner was served with a writ of capias ad respondendum and raised in his petition for writ of certiorari the jurisdiction of Philadelphia to impose fines and penalties such as these on civilian employees, residing in New Jersey but working at the Shipyard,[10] who had failed to pay the City Wage Tax.

*2. Even if the petition for the writ of habeas corpus is not premature, petitioner is not entitled to the relief sought on this record.*

A. PHILADELPHIA HAS JURISDICTION TO IMPOSE ITS WAGE TAX ON THE EARNINGS OF PETITIONER AT THE SHIPYARD.

 By appropriate legislation,[11] Pennsylvania ceded exclusive jurisdiction over the land comprising the Shipyard to the United States of America, provided "That the cession * * * made shall continue in force so long as the * * * territory shall be used by the government of the United States for the purposes of a navy yard, and no longer: *And, provided, also,* That all process, civil and criminal, of the Commonwealth of Pennsylvania, shall extend into, and be effectual, within the territory hereby ceded, as if this law had not passed."

---

**8.** See, also, Lyon v. Harkness, 1 Cir., 1945, 151 F.2d 731, certiorari denied 1946, 327 U.S. 782, 66 S.Ct. 682, 90 L. Ed. 1009. Apart from the question of the exhaustion of State remedies, it has been held that a writ of habeas corpus is not a proper remedy in the case of arrest under civil process. See Ex parte Wilson, 1810, 6 Cranch 52, 3 L.Ed. 149. Ex parte Watkins, 1833, 7 Pet. 568, 8 L.Ed. 786, relied on by petitioner, is inapplicable since it involved a fine imposed in a criminal proceeding commenced by indictment.

**9.** The history of the 1948 legislation is fully covered at pp. 3–4 of petitioner's memorandum, received 10/22/57, and pp. 3–5 of the City's supplemental brief.

**10.** See page 7 of Petition for Writ of Certiorari and pp. 23 and 24 of brief in support of petition (No. 1094, Oct. Term 1945, in the Supreme Court of the United States). The hearing judge has not overlooked the rule that the denial of a petition for certiorari only means that fewer than four justices believed the decision of the lower court should be reviewed by the Supreme Court. Cf. Agoston v. Commonwealth, 1950, 340 U.S. 844, 71 S.Ct. 9, 95 L.Ed. 619. However, in view of the numerous prior cases considering the questions in this case, this court, in its discretion, should require that petitioner first apply for a writ of habeas corpus in the State court, clearly raising his federal grounds, and, then, if necessary, present them to the United States Supreme Court by petition for writ of certiorari before asking this court for such a writ.

**11.** See Acts of March 29, 1827, P.L. 153, Feb. 10, 1863, P.L. 24, and April 4, 1866, P.L. 96, 74 P.S. § 1 note; see, also, Kiker v. City of Philadelphia, 1943, 346 Pa. 624, 627ff., 31 A.2d 289, certiorari denied 1943, 320 U.S. 741, 64 S.Ct. 41, 88 L.Ed. 439.

In the Buck Act (4 U.S.C.A. § 106), Congress provided that:

"No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, *by reason of his* residing within a Federal area or *receiving income* from transactions occurring or *services performed in such area;* and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area." [12] (Emphasis supplied.)

This Act has been construed to authorize a city to impose a tax on civilian employees of the United States Navy for the privilege of working in a naval ordinance plant located in such city.[13] See Howard v. Commissioners, 1953, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617.[14] It has been recognized for many years that income of non-resident federal employees earned in a state or subdivision may be taxed by such jurisdiction. Shaffer v. Carter, 1920, 252 U.S. 37, 52,

12. 4 U.S.C.A. § 110 defines "income tax," as used in 4 U.S.C.A. § 106, to mean "any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts." Section 204 of the Philadelphia Wage Tax Regulations (cf., also, § 403) makes clear that employees may deduct expenses connected with the performance of their services in Philadelphia in computing their tax, so that the Philadelphia Wage Tax bears more similarity to a net income tax than to a gross income tax.

13. The allegations of the petition that petitioner uses a ferry to cross the Delaware River directly to the Shipyard and that he has no contacts with other parts of Philadelphia do not exempt him from the tax for the reasons stated in Kiker v. City of Philadelphia, supra, 346 Pa. at pages 632–634, 31 A.2d at page 294, where the court said:

"There is no doubt that after the cession, Philadelphia was obligated to confer all the usual attributes of government—the same as those possessed by residents and citizens of Philadelphia—upon those deriving income from working on League Island; fire and police protection, the right to use all municipal facilities, etc. This obligation can be called into play at any time the national government refuses or neglects to furnish them. * * * The fact that the Federal government * * * does not at this time see fit to take full advantage of the obligation of this Commonwealth, or its political subdivision, the City of Philadelphia, to make available protection and benefits to persons and property on the Island, does not justify our invalidation of the income tax in question, as far as plaintiff and those in a similar position are concerned. * * * The

reservation is immediately adjacent to Philadelphia; is geographically within its limits; and since December 31, 1940, because of the provisions of Public Act No. 819, is actually part of that City for the purposes of imposing the tax here under consideration. Plaintiff may at all times use the streets, bridges and other facilities of the City, and also has the benefit of protection of its police and fire departments when engaging in business or pleasure in that municipality, as well as many other advantages. It is common knowledge that the City of Philadelphia cuts all ice, and keeps the Delaware River navigable from the northern limits of the City to Chester, where in the winter months navigation would otherwise be closed, making possible to plaintiff the transportation he uses to go to and return from League Island to his home in New Jersey. This is decidedly a benefit to him. * * * Therefore, we are convinced that the tax does not violate the Fourteenth Amendment of the Federal Constitution that all the benefits of the facilities of Philadelphia are legally available to plaintiff, and he has no just reason to complain of the tax."

14. In this case, the court said 344 U.S. at page 629, 73 S.Ct. at page 468:

"We hold that the tax authorized by this ordinance was an income tax within the meaning of the Buck Act. The City, it is conceded, can levy such a tax within its boundaries outside the federal area. By virtue of the Buck Act, the tax can be levied and collected within the federal area, just as if it were not a federal area.

"Since the area is within the boundaries of the City of Louisville, and this tax is an income tax within the meaning of the Buck Act, the tax is valid."

53, 55, 40 S.Ct. 221, 64 L.Ed. 445;[15] Graves v. People of State of New York ex rel. O'Keefe, 1939, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927.

B. PHILADELPHIA HAS JURISDICTION TO IMPOSE FINES AND PENALTIES ON PETITIONER FOR FAILURE TO FILE HIS TAX RETURNS AND PAY HIS TAX AT THE OFFICE OF THE DEPARTMENT OF COLLECTIONS IN PHILADELPHIA.

 It is clear that the City has the power to impose the fines and penalties involved here for failure of petitioner to file tax returns and pay the tax. See City of Philadelphia v. Cline, supra, 158 Pa.Super. at page 184, 44 A.2d at page 612, and authorities cited there. The tax ordinance and the regulations issued thereunder specify that the returns shall be filed with, and the tax paid to, the Department of Collec-

tions, whose offices are located in City Hall Annex, North Penn Square, Philadelphia, Pa.[16] The Supreme Court has stated that "where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime." See Johnston v. United States, 1956, 351 U.S. 215, 260, 76 S.Ct. 739, 742, 100 L.Ed. 1097, and cases there cited.[17] The writ of capias ad respondendum under which petitioner was taken into custody by the City Deputy Sheriff is not based on any action of petitioner at the Shipyard but the fines and penalties are claimed for his failure to file the returns and pay the tax at City Hall Annex.

C. THE PHILADELPHIA COURT HAS JURISDICTION TO REQUIRE SERVICE OF THE WRIT OF CAPIAS AD RESPONDENDUM ON PETITIONER WHILE WORKING AT THE SHIPYARD AND TO TAKE HIM INTO CUSTODY IN

---

15. In this case, the court said 252 U.S. at pages 52, 53, & 55, 40 S.Ct. at page 225:

"And we deem it clear, upon principle as well as authority, that just as a state may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to nonresidents from their property or business within the state, or their occupations carried on therein, enforcing payment, so far as it can, by the exercise of a just control over persons and property within its borders.

" * * * the very fact that a citizen of one state has the right to hold property or carry on an occupation or business in another is a very reasonable ground for subjecting such nonresident, although not personally, yet to the extent of his property held, or his occupation or business carried on therein, to a duty to pay taxes not more onerous in effect than those imposed under like circumstances upon citizens of the latter state.
* * * * *
"The practical burden of a tax imposed upon the net income derived by a nonresident from a business carried on within the state certainly is no greater than that of a tax upon the conduct of the business, and this the state has the lawful power to impose, as we have seen."

16. Section 3(b) of the City Income Tax Ordinance requires that persons in the petitioner's situation "shall * * * make and file with the Department of Collections a return on a form furnished by or obtainable from the Department of Collections * * * The person making the said return shall at the time of filing thereof pay to the said Revenue Commissioner the amount of tax shown as due thereon."

Section 301(a) provides:
"Section 301. *Who Must File A Return.*
"(a) Every person who is employed on a salary, wage, commission or other compensation, which is subject to tax, and which tax his employer is *not* required to withhold; * * *."
Section 302(a) (1) provides:
"Section 302. *Filing Returns.*
"(a) In general,
"(1) All returns must be filed with the Department of Collections, City Hall Annex, Philadelphia 7, Penna.; * * *."

17. See, also, authorities cited at pp. 19 and 20 of the City's supplemental brief. It should also be noted that the writ of capias ad respondendum has always been considered a civil writ and, hence, petitioner's reliance on cases involving the commission of crimes on federal territory would seem inapplicable in any case. See authorities at pp. 18 and 19 of the City's supplemental brief.

A REASONABLE MANNER, PENDING HIS FILING REASONABLE BAIL FOR APPEARANCE IN COURT.

As pointed out under B above, the writ of capias ad respondendum served on petitioner was issued for his failure to file a return and pay a tax at City Hall Annex in Philadelphia, which is not in the Shipyard. The acts of the Pennsylvania legislature ceding the land occupied by the Shipyard to the Federal Government provided that "all process, civil and criminal, of the Commonwealth of Pennsylvania, shall extend into, and be effectual, within the territory ceded." [18] Such language has been consistently construed to authorize a state to execute civil and criminal process for acts done within the state on the lands ceded to the Federal Government. See Fort Leavenworth R. Co. v. Lowe, 1885, 114 U.S. 525, 534, 5 S.Ct. 995, 29 L.Ed. 264; [19] United States v. Unzeuta, 1930, 281 U.S. 138, 142–143, 50 S.Ct. 284, 74 L.Ed. 761; [20] Rogers v. Squier, 9 Cir., 1946, 157 F.2d 948, 950; [21] In re Ladd, D.C.D.Neb.1896, 74 F. 31, 36–38.

If the City should attempt to serve 100 such writs at the same time at the Shipyard without working in cooperation with the federal officials in charge, there might be such an interference with federal activities as to require action by a federal court. [22] However, there is no evidence of any refusal by the City to cooperate with the federal officials operating the Shipyard in serving writs such as the one involved in this case, and this suit has been instituted as a test case by cooperative action of the responsible officials of the City and the Federal Government. [23]

The undersigned notified counsel by letter of November 29, 1957, a copy of which is attached, of his intention to enter, on December 9, 1957, an order granting respondent's Motion to Dismiss

18. See 157 F.Supp. at page 97 above and footnote 11.

19. In this case, the court said 114 U.S. at page 534, 5 S.Ct. at page 1000:
"It provides only that civil and criminal process issued under the authority of the state, which must, of course, be for acts done within and cognizable by the state, may be executed within the ceded lands, notwithstanding the cession. * * * The whole apparent object is answered by considering the clause as meant to prevent these lands from becoming a sanctuary for fugitives from justice for acts done within the acknowledged jurisdiction of the state."

20. In this case, the court said 281 U.S. at pages 142–143, 50 S.Ct. at page 285:
"When, in such cases, a state cedes jurisdiction to the United States, the state may impose conditions which are not inconsistent with the carrying out of the purpose of the acquisition. * * * (Citing cases.) The terms of the cession, to the extent that they may lawfully be prescribed, determine the extent of the Federal jurisdiction.

"In the present instance, there is no question of the status of the Fort Robinson Military Reservation. Nebraska ceded to the United States its entire jurisdiction over the reservation save in the matter of executing process and opening and repairing roads or highways. * * * The conditions of the cession relating to the execution of criminal process were construed as intended to save the right to execute process within the reservation for crimes committed outside; that is, to prevent the reservation from being a sanctuary for fugitive offenders."

21. In this case, the court said 157 F.2d at page 950:
"In making these jurisdictional cessions it has been common practice of the states to reserve the authority to serve or execute state process, the purpose being to prevent the area affected from becoming a sanctuary for offenders or those seeking to avoid process."

22. Cf. Johnson v. State of Maryland, 1920, 254 U.S. 51, 55, 41 S.Ct. 16, 65 L.Ed. 126. There is no evidence in this record of interruption by the City of the "acts of the general government itself."

23. The following briefs are being placed in the Clerk's file: petitioner's memorandum filed 10/9/57, petitioner's memorandum of points and authorities filed 10/22/57, petitioner's reply brief filed 11/27/57, respondent's brief filed 10/9/57, and respondent's supplemental brief filed 11/1/57.

so that petitioner would have an opportunity to arrange for bail or to apply to the State court for a writ of habeas corpus.[24]

24. Petitioner may renew his petition under this file number if there is any violation of his Federal rights during the pendency of his application for a writ of habeas corpus in the State court or after exhaustion of such State court proceedings, including a petition for writ of certiorari to the Supreme Court of the United States.