**CONSOLIDATION COAL COMPANY, a corporation, Plaintiff,**

**v.**

**Lawrence W. BAILEY et al., Defendants.**

**Civ. A. No. 70-1144.**

United States District Court,
W. D. Pennsylvania.

June 30, 1971.

Anthony J. Polito, Rose, Schmidt & Dixon, Pittsburgh, Pa., for plaintiff.

Franklin D. Cleckley, Morgantown, W. Va., Harry F. Swanger, Pittsburgh, Pa., for defendant Bailey.

Hook & Hook, Waynesburg, Pa., Clayton Sweeney, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendant Perry Tp.

## OPINION

DUMBAULD, District Judge.

This judicial odyssey had its genesis in the attempt of the township of Perry, in Greene County, Pennsylvania, to extract an earned income and occupational privilege tax (collectible through withholding by their employer) from the miners (residents of West Virginia) who extract coal from the bituminous deposits underlying said township.

On January 27, 1968, Perry Township levied a $5 tax "upon the privilege of engaging in an occupation within Township of Perry in the fiscal year 1968, from the effective date of this ordinance, February 1, 1968."[1] On December 20, 1968, a tax of one per cent was imposed, for each calendar year beginning with 1969 "upon the * * * compensation earned for activities or services performed or rendered within the Township by individual non-residents of the Township."[2]

It is thus clear that what is taxed by these ordinances is the performance of activities or services, for pay, within the township, that is to say, engaging in a gainful occupation within the township.

It is plain (to this Court at least) that such a tax is constitutionally valid, and supported by an adequate "nexus."[3] It is settled that non-resident federal employees may be taxed by a municipality where they work;[4] *a fortiori* employees of a private corporation are liable to such a tax.

It was stipulated on appeal in No. 71–1193 that the miners involved in this case are engaged in extracting coal within the bowels of Perry Township. The same stipulation was made at the hearing before this Court on June 21, 1971, after remand.[5]

Thus it is plain that on the merits of the case the tax is constitutional, and that the money withheld by the employer, Consolidation Coal Company, should be paid without delay to Perry Township.

How may this be done? How may this Court's conclusion be effectuated or "implemented," to use the current bureaucratic jargon?

Although it is against public policy for courts to interfere with the collection of taxes,[6] a process which though painful

---

1. R. 104a–105a. For convenience, citations will be to the printed Joint Appendix in C.A. 3, No. 71–1193, cited as "R."

2. R. 115a–116a.

3. The useful term "nexus" was employed by Mr. Justice Tom C. Clark in Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 452, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959), upholding a levy upon "local activities within the taxing State forming sufficient nexus to support the same." See Dumbauld, The Constitution of the United States, 121–125 (1964).

4. Application of Thompson, 157 F.Supp. 93, 98 (E.D.Pa.1957) aff'd United States

ex rel. Thompson v. Lennox, 258 F.2d 320 (C.A. 3, 1958), c. d. 358 U.S. 931, 79 S.Ct. 317, 3 L.Ed.2d 303 (1959).

5. It is therefore unnecessary to speculate whether merely entering the mine at a portal in Perry Township (to extract coal located in West Virginia) would itself be a sufficient "nexus." Perhaps misled by a notice from the "publican" employed to collect the tax that it applied to all persons "who work or portal at the Mt. Morris portal in Perry Township" (R. 136a), the litigation in the Monongalia County, West Virginia, court, hereinafter described, spoke of miners who "portal" at Mt. Morris. R. 139a, 141a, 142a.

to those who pay is indispensable to the maintenance of government, several years of multifarious litigation have now elapsed without Perry Township being able to get its sticky fingers on the money reposing in the adhesive coffers of the coal company.[7]

With the goal thus in sight,[8] let us examine the tortuous maze of complicating factors thrown up by the respective parties to the case.

The first temple of justice where the peregrinating proceduralists made obeisance and hung their dank weeds as a trophy [9] was the Circuit Court of Monongalia County, West Virginia. In that tribunal on April 30, 1969, one Lawrence W. Bailey, a foreman employed by plaintiff Consolidation Coal Company, (contending that the tax was unconstitutional and void), obtained an injunction restraining the company from paying over any part of the withheld wages to the Pennsylvania taxing bodies or collector. (R. 141a–142a). A similar injunction was entered on May 15, 1969. (R. 142a– 143a).

The next tribunal honored by the peregrinating parties was the United States District Court for the Northern District of West Virginia. In that court (perhaps because the Monongalia County court could not obtain jurisdiction over the Pennsylvania taxing authorities), the coal company on August 29, 1969, brought an action of Interpleader under 28 U.S.C. § 1335. (R. 146a–151a). The Pennsylvania tax authorities as well as Bailey (as representing the class of 312 miners residing in West Virginia from whom the company had withheld wages) were made parties. Consolidation Coal Co. v. Bailey, 308 F.Supp. 1251, 1252– 1253 (N.D.W.Va.N.D.1970). Judge Sidney L. Christie, on February 5, 1970, held (very sensibly, in our judgment) that the controversy involved Pennsylvania tax law and might more appropriately be determined by the judiciary of that Commonwealth, wherein there was in fact a pending proceeding in which all parties could participate. He therefore dismissed the interpleader action.

It is not clear what happened to the proceeding; referred to by Judge Christie, but on March 12, 1970, the Perry Township Supervisors sued Consolidation and Bailey (as representing all employees of Consolidation residing in West Virginia and employed at the mine in Perry Township) at No. 542 in Equity in the Court of Common Pleas of Greene County for an accounting. (R. 159a– 168a).[10] *Eodem die* the court ordered notice by publication for three successive weeks in the Democrat Messenger, a newspaper published in Waynesburg and established in 1813. (R. 169a–172a).

The miners contend that the court should have required that the persons whose wages were withheld should be notified individually (as was done in the

---

6. *E. g.*, 26 U.S.C. § 7421(a) ; 28 U.S.C. § 1341.

7. Philosophically, it seems unconscionable for the coal company to treat the tax as valid for the purpose of withholding wages earned by its employees, but as being of questionable validity insofar as paying over the withheld fund to the taxing township is concerned. This conduct brings to mind the feat of the Reconstruction Congress which recognized the defeated Confederate States as States within the Union for the purpose of having them exercise the supreme legislative function of ratifying the Fourteenth Amendment, but denied them representation in the enactment of ordinary legislation. Negrich v. Hohn, 246 F.Supp. 173, 180–181 (W.D.Pa.1965). As Plautus said, to blow and to swallow at the same time is not easy. Dean Acheson, Power and Diplomacy, 105 (1958) ; "Simul flare sorbereque haud facile est." Mostellaria, Act III, 2.105. United States v. Noonan, 434 F. 2d 582 (C.A. 3, No. 18031, April 6, 1970) (Aldisert, J.).

8. Italiam sequimur fugientem. Vergil, Aeneid, V, 629.

9. Me tabula sacer
    Votiva paries indicat uvida
    Suspendisse potenti
    Vestimenta maris deo.
    Horace, Odes, I, v., 11. 13–16.

10. An action of assumpsit was also filed on the same date at No. 95 August Term. R. 193a.

case at bar),[11] but it seems clear that the litigation was one of considerable notoriety, and that it was probably for tactical reasons [12] that no appearance was made on behalf of Bailey or his group, and that judgment was taken by default, insofar as they were concerned, on July 6, 1970. (R. 186a–192a). We adhere to the view previously expressed that Judge Glenn Toothman's opinion (in which he quoted from an opinion of our learned colleague on this Court, Judge Louis Rosenberg) was entirely sound and correct and properly resolved the contentions as to constitutionality which are involved in the case.

Notwithstanding all that had gone before, the peregrinating parties then turned to the true shrine of juristic wisdom, the United States District Court for the Western District of Pennsylvania, where Consolidation on September 28, 1970, filed the instant action of interpleader against the same claimants (the amount now having grown to $55,584.93 from the $18,928.47 at stake in the West Virginia interpleader action). R. 5a–13a. Upon voluminous pleadings filed by all parties and a motion to dismiss supported by lengthy documentation, this Court on February 1, 1971, granted the motion to dismiss, adopting independently the reasoning of Judge Christie and Judge Toothman, as well as holding that the Greene County determination was *res*

*judicata* and binding upon plaintiff. R. 83a–85a.

The next mill to which the peregrinating parties brought their grist for fine grinding was the Court of Appeals for the Third Circuit, which on June 7, 1971, vacated this Court's order of February 1, 1971, and remanded the case for further proceedings. Judge Hastie dissented on the ground that "the granting of relief in this case would be contrary to the intendment of Section 1341 of Title 28 U.S.C." [13]

The opinion emphasizes that the miners claim in this action nothing but the fund in plaintiff's hands, as opposed to seeking an injunction against future enforcement of the tax; and that in an interpleader action they are inherently limited to such relief against the *res* in plaintiff's hands. Plaintiff, in other words, is merely a stakeholder of the fund and asserts no proprietary claim to the fund.

This does indeed seem to present the typical pattern of an interpleader action.

The Court does have jurisdiction of all parties, including the stakeholder and the two claimants.

A hearing was held on June 21, 1971, at which all three parties made stipulations regarding the matters put forth by each party and regarded by such party as significant. Such oral argument as

11. Plaintiff's counsel notified all West Virginia residents now on its payroll from whom tax has been withheld of the hearing on June 21, 1971. He stated, however, that some of the fund may be composed of wages withheld from West Virginia residents now deceased, or moved away, or no longer working for plaintiff. We think the rule *de minimis* would apply to such portions of the fund, and that the questions of law would be identical with respect to such persons and the ones who received notice, so that the interests of all members of the class are adequately represented.

12. This stratagem is akin to lack of quorum in a legislative body resulting from intentional absence of members otherwise too few to defeat a pending measure.

A noteworthy example occurred in 1787 when opponents of ratification of the federal Constitution left the Pennsylvania assembly without a quorum until a member was forcibly brought into the house and kept there (in spite of his wish to answer a call of nature) until provision for a ratifying convention could be enacted. McMaster and Stone, Pennsylvania and the Federal Constitution 1787–1788, 60–71 (1888).

13. This section (referred to in footnote 6 *supra*) provides that "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

the parties wished was also heard. In the light of these stipulations and the Court's rulings on certain points raised, we believe the path is now cleared for a disposition of the case on its merits. We shall make such a disposition, the parties having made clear and preserved for appellate review their contentions which have been ruled upon adversely by this Court.

As would be expected, the brunt of the argument in developing intermediate issues was borne by the tax authorities and the miners. The company, as *tertius gaudens*, had little to say, except to request the discharge from further liability or litigation upon paying the fund into court. Counsel for Consolidation also generously waived a fee, in order that the fund might go undiminished by the usual counsel fees to its true owners. Bene meruit de republica. Let this deed be remembered gratefully by posterity as exemplifying the highest traditions of the legal profession.

To begin examination of Perry Township's contentions, it is to be noted that the argument is reasserted that the instant interpleader violates the policy of 28 U.S.C. § 1341 against enjoining collection of taxes levied under State law. Whatever the merits of this position may be, it would be unseemly for this Court, as an inferior tribunal, to accept it, after the majority of the Court of Appeals has apparently considered but rejected it, as shown by Judge Hastie's dissent.

■ Moreover, on its merits, the majority is technically right as far as it goes. All that an interpleader action can deal with is the disposition of a particular fund. Any injunctions issued against suits with respect to the fund are simply ancillary or incidental to the disposition of the fund and merely have the purpose of enforcing the distribution made by the Court.

Counsel points to the language of the Complaint where relief is sought with respect to the fund "and any additions thereto." R. 12a–13a. Counsel for Consolidation acceptably explained these words as merely covering accretions to the fund pending determination by the Court, not as applying to subsequent taxes. In other words, the size of the fund involved in the interpleader can not definitely be known until the Court orders its distribution to the proper parties. After the Court's determination nothing further would be affected by the judgment in this litigation.

From a practical standpoint, of course, Judge Hastie and the tax authorities are right in that the pendency of the interpleader action has prevented the Township from receiving the revenue involved. Likewise Consolidation might continue to impound in its coffers subsequent withholdings, after the current fund has been paid into court and distributed. But counsel for Consolidation has in open court stated that this course will not be followed. In any event, perhaps some weight as *stare decisis* might be attributed to this Court's determination of the controlling question, namely the constitutional validity of the tax.

Moreover, statutes prohibiting injunctions against collection of taxes are subject to judicial erosion. It is interesting to note the fate of the similar provision (now 26 U.S.C. § 7421) prohibiting court restraints on the collection of federal tax.[14] Similar erosion has been experienced with respect to 28 U.S.C. § 2283 forbidding injunctions to stay proceedings in State courts.[15] Perhaps the elegantly bewhiskered John Chipman Gray was right in thinking that statutes are

14. See Standard Nut Margarine Co. v. Miller, 284 U.S. 498, 511, 52 S.Ct. 260, 76 L.Ed. 422 (1932), and the comments in Corwin, The Twilight of the Supreme Court, 94 (1934); and Corwin, Court over Constitution, 178–181 (1938). The *Nut* doctrine was reaffirmed in Enochs v. Williams Packing Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).

15. See Dumbauld, Judicial Interference with Litigation in Other Courts, 74 Dickinson L.Rev. 369, 385–387 (1970).

only sources of law, that only what the courts say the statute means is really law.[16]

Moreover, if Perry Township's position were accepted it would mean that no interpleader action could ever be brought if one of the claimants was a tax collecting agency. Yet the Supreme Court, in the exercise of its original jurisdiction, has taken cognizance of the conflicting tax claims of different States in what is in substance an interpleader action. Texas v. Florida, 306 U.S. 398, 405–412, 59 S.Ct. 563, 83 L.Ed. 817 (1939).

At any rate, to distribute the fund now existing is not quite the same thing as to enjoin the collection of taxes *in futuro*.

Another contention of Perry Township which it would be unseemly for this Court to espouse is that plaintiff is not entitled to a discharge upon paying the fund into court, and that this Court, upon finding further facts, should again dismiss the interpleader action.

We are not convinced that the circumstances upon which the Township bases its contention are sufficient to undermine the plain holding by the majority of the Court of Appeals that interpleader is appropriate in the case at bar.

■ It is said that Consolidation is not a "disinterested" stakeholder, because it is seeking to curry favor with its employees by impeding the Township's efforts to collect the tax. Consolidation is clearly "disinterested" in the sense that it claims no proprietary interest itself in the money which it holds.[17] Nothing more is required of a stakeholder subject to conflicting claims in an interpleader proceeding. The psychological motives of the company are not of importance, so long as there is color of right in the conflicting claims asserted against it.

Turning now to the contentions of the miners, we note that they reaffirm the feudal principle that allegiance and protection are reciprocal, and allege that Pennsylvania and its subdivisions do not do enough for the miners to justify taxing them. No mine safety regulations, workman's compensation, "black lung" benefits, or other services are furnished by Pennsylvania. Apparently under an administrative arrangement between the two States, whenever a joint mine is opened the State first having occasion to exercise jurisdiction retains it. In substance, then, Pennsylvania does nothing for these miners "below ground." But above ground the municipal bodies exercise their normal activities of fire and police protection and the like. Perry Township particularly emphasizes that air shafts from the mine emerge above the soil in Perry Township and that protection of the source of air is of great importance to the welfare and safety of the miners at their work.

■ We conclude that Perry Township performs sufficient services to sustain its power to tax. Most taxpayers nowadays feel that they are not getting their money's worth. These miners are in no different position than taxpayers generally. It would be impractical to insist that each taxpayer must receive a specific benefit equal in value to the amount of his tax in order to constitute an adequate *quid pro quo*. The classical example is the bachelor with no children who must nevertheless pay school tax.

■ Another argument emphasized by counsel for the miners is the fact that certain individuals who do not "portal" in Perry Township, but enter the mine somewhere in West Virginia, have escaped taxation.

In view of the specific wording of the ordinances and the statements of counsel for Perry Township (the draftsman of

16. Gray, The Nature and Sources of the Law, 125 (2nd ed. 1921).

17. This is specifically stated in plaintiff's proposed Finding No. 10. No. 11 fur-

ther states: "Consol has not and does not now seek any determination with respect to the validity of the Perry Township Tax Ordinances." See note 7 *supra*.

the ordinances) we are satisfied that the individuals who have come in through the back door without being caught are simply sporadic instances of beneficiaries of ineffective enforcement, and do not represent a settled policy or practice on the part of the tax authorities of treating the place where the miner "portals" as the criterion of taxation *vel non.* See Clark v. Ellenbogen, 319 F.Supp. 623, 628 (W.D.Pa.1970). It is clear that working in Perry Township soil is the true test of taxability; and that all miners who do work in the Township will be taxed if the Township catches them.

The miners also emphasize that only extraction of the coal occurs in Perry Township; and that washing, processing, and preparation of the product is completed at facilities located in West Virginia. We do not think this circumstance detracts from Perry Township's power to tax, based upon the activities which *do* take place in the township.

In conclusion, we find and hold that plaintiff is entitled to discharge from liability (with ancillary and incidental injunctive relief against litigation with respect to such liability) upon paying into court the fund in its possession up to the date of entry of this opinion, together with such interest or other accumulation as may have resulted from prudent investment of such fund by plaintiff; and that as between the claimants to the fund Perry Township is entitled to receive the fund in its entirety.

This opinion shall be deemed to contain the findings of fact and conclusions of law which the Court deems necessary to the proper disposition of the case, and such other findings and conclusions which shall have been submitted by the parties in support of the issues which they consider necessary to sustain the points which they have preserved upon the record and which shall have been approved and signed by the Court, shall be deemed to have been incorporated herein by reference as fully as if they had been set forth herein *in haec verba.*