## CENTRAL STEEL & WIRE CO. v. CITY OF DETROIT.

### No. 9744.

United States District Court
E. D. Michigan, S. D.

Sept. 5, 1951.

Edward T. Goodrich of Hill, Essery, Lewis & Andrews, Detroit, Mich., for the plaintiff.

Paul T. Dwyer, Acting Corp. Counsel, John G. Dunn, Asst. Corp. Counsel, both of Detroit, Mich., for the defendants.

THORNTON, District Judge.

The complaint filed herein alleges that the plaintiff, an Illinois corporation, is now and was on January 1, 1950, engaged in the business of wholesale distributing of steel and non-ferrous mill products in the City of Detroit, and in connection with this business it had, in the City of Detroit, on January 1, 1950, for sale in the conduct of its said business, a quantity of steel and non-ferrous sheets, bars, tubes, shapes and other materials hereinafter called "inventory", which was subject to taxation in the City of Detroit for the year 1950; and further alleges that by Article XIV, Section 11 of the Constitution of Michigan (1850), the legislature was directed to provide a uniform rule of taxation except on property paying specific taxes and by Article XIV, Section 12 of said Constitution all assessments were directed to be on property at its cash value. Such provisions were incorporated without change in Article X, Section 3, and Article X, Section 7, respectively, of the Constitution of Michigan (1908), and that pursuant to such constitutional direction, the Legislature of the State of Michigan enacted Act No. 206 of the Public Acts of 1893, which Act, as amended, is hereinafter referred to as the General Property Tax Law. Section 24 of said Act requires that all property, both real and personal, be assessed at its true cash value. By Section 107 of said Act, said Act was made applicable to all cities where not inconsistent with their respective charters; and that by Title VI, Chapter II, Section 1 of the Charter of the City of Detroit, all real and personal property within the City subject to taxation by the laws of the State of Michigan is required to be assessed at its true cash value; and that for the year 1950 the total personal property assessment made against this plaintiff by the Board of Assessors of the City of Detroit and upheld on appeal by the Common Council Board of Review was $1,051,220; that of such amount $953,049 was on account of such "inventory"

of taxpayer. That the total amount of plaintiff's personal property taxes in the City of Detroit for the year 1950 was $34,786.96 of which the plaintiff paid one-half ($17,393.48), on August 14, 1950; and that the said payment made on August 14, 1950, was made to the Treasurer of the City of Detroit, accompanied by written protest, in accordance with the provisions of Section 53 of the General Property Tax Law, the grounds of such protest being substantially those forming the basis of the within action; and that the assessed valuation made against this plaintiff on account of "inventory" was equal to or in excess of the true cash value of such "inventory"; that the assessed valuation of real estate in the City of Detroit for the year 1950 was substantially less than the true cash value thereof. That residential real estate in the City of Detroit for the year 1950 was assessed at approximately 50% of its true cash value. That other types of real estate in the City of Detroit were assessed for the year 1950 at somewhat higher than 50% of true cash value, but that the general level of assessments of real property in the City of Detroit for taxation for the year 1950 was at less than 70% of the true cash value of such real estate. That the assessed valuation of real estate in the City of Detroit for the year 1950 is approximately two-thirds of the assessed valuation of all property in the City of Detroit.

The plaintiff further complains "That the assessing of 'inventory' at equal to or greater than true cash value while at the same time assessing real estate at less than true cash value is contrary to Article X, Section 3, and Article X, Section 7, of the Michigan Constitution (1908), contrary to Section 24 of the General Property Tax Laws, contrary to Title VI, Chapter II, Section 1, of the Charter of the City of Detroit (1945); and that the levying and collection of taxes on such assessments deprives plaintiff of its property without due process of law, contrary to the Fourteenth Amendment of the Constitution of the United States, and contrary to Article II, Section 16, of the Constitution of the State of Michigan, and deprives plaintiff of the equal protection of the laws, contrary to the Fourteenth Amendment of the Constitution of the United States."

The complaint terminates with the following: "Wherefore, plaintiff claims damages in the amount of Ten Thousand and No/100 Dollars ($10,000.00) and prays for judgment against the defendant in that amount."

To this the defendant moved to dismiss, basing its motion on four grounds, the one with which we are here concerned being as follows: "To dismiss the action for the reason that the Court has no jurisdiction, the action being one to enjoin, suspend or restrain the assessment, levy or collection of a tax under State law where the plaintiff has an adequate, plain, speedy and efficient remedy in the Courts of the State."

In support of its motion to dismiss the defendant relies upon Title 28, U.S.C.A. § 1341, which is as follows: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

The plaintiff's cause of action alleges a proper diversity of citizenship and an amount in controversy in excess of $3000, and further alleges that the levy and collection of the taxes complained of on certain assessments deprive the plaintiff of its property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States, and further that such levy and collection deprive plaintiff of the equal protection of the laws contrary to the Fourteenth Amendment to the Constitution of the United States, and terminates its complaint by praying for a money judgment only.

It is not apparent to this Court that a statute which in plain language prohibits a District Court from *enjoining, suspending* or *restraining* the assessment, levy or collection of any tax under state law has any conceivable application to this cause of action. A suit to recover money paid as taxes by an allegedly illegal assessment is far removed from an action to enjoin, suspend or restrain the assessment, levy or collection of a tax, and to hold that Section 1341, Title 28 U.S.C.A.

controls such an action at law would require this Court to ignore well established principles of statutory construction. "The most rational method of interpreting the will of Congress is by exploring its intention at the time the questioned law was made, by signs the most natural and probable; and these signs are either the words, the context, the subject matter, the effect and consequences, or the spirit and reason of the law. With respect to the words, they are generally understood in their usual and most ordinary signification, not so much regarding their grammar as their general and popular use." Detroit Edison Co. v. Securities & Exchange Commission, 6 Cir., 119 F.2d 730, 738. And further "We see no reason for delving beneath this unequivocal term in order to spell out a meaning at variance with the intent expressed." Robertson v. Argus Hosiery Mills, Inc., 6 Cir., 121 F.2d 285, 286.

In American Barge Line Co. v. Cave, City Treasurer, D.C., and seven other cases, reported in 68 F.Supp. 30, 50, we find eight consolidated suits against Jess S. Cave, City Treasurer and Commissioner of Public Finance of the City of New Orleans, and George Montgomery, the State Tax Collector for the City of New Orleans, to recover money paid, under protest, in settlement of claimed ad valorem taxes levied under assessments made by the Louisiana Tax Commission on and against certain watercraft of the plaintiffs. (Lionel G. Ott was substituted in place of Jess S. Cave, when he succeeded Cave in office); and in paragraph [12] of this citation we find the following: "Notwithstanding the foregoing findings concerning the operations of the four plaintiffs, and notwithstanding the stipulations entered into by said plaintiffs and hereinabove specially referred to, this Court finds itself without jurisdiction to adjudicate with respect to the matter in controversy in three of the actions submitted to it for decision, because in neither does the plaintiff pray for an amount in excess of $3,000, exclusive of interest and costs".

Thus we find the Louisiana District Court disregarding a stipulation conferring jurisdiction upon it, examining these cases for possible jurisdictional defects, and on its own motion dismissing three causes of action because of an absence of the jurisdictional amount of $3000, but concluding that it had jurisdiction in the five remaining actions without giving consideration to the prohibition contained in Title 28 U.S.C.A. § 1341.

In the review of the decision of the Louisiana District Court in the foregoing cases by the Court of Appeals for the 5th Circuit and the Supreme Court of the United States, Section 1341, Title 28 U.S.C.A. was apparently considered not to have any application by either of the courts and/or by counsel in a controversy similar to the one before this Court for consideration. See Ott v. DeBardeleben Coal Corporation (and ten other cases), 5 Cir., 166 F.2d 509 and Ott, Commissioner of Public Finance v. Mississippi Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585, rehearing denied 336 U.S. 928, 69 S.Ct. 653, 93 L.Ed. 1089.

Because this Court has jurisdiction over the plaintiff's cause of action, an Order may be presented denying defendant's motion to dismiss.