**NON–RESIDENT TAXPAYERS ASSOCIATION, a corporation on behalf of itself, its members and other persons who have been and will be similarly situated in the same class and classes of persons, et al., Plaintiffs,**

v.

**The MUNICIPALITY OF PHILADELPHIA et al., Defendants.**

**Civ. A. No. 377–71.**

United States District Court, D. New Jersey.

Dec. 29, 1971.

See 92 S.Ct. 2061.

---

6. This enabling legislation was originally enacted as P.L. 45 § 1 (1932) and is known as the Sterling Act.

See also D.C., 341 F.Supp. 1135.

Ballen, Batoff & Laskin, by Lee B. Laskin, Camden, N. J., for plaintiffs.

Herbert I. Stern, U. S. Atty., Newark, N. J., by Joseph Audino, Asst. U. S. Atty., Camden, N. J., for defendants United States Government, George Schultz, Director of Office of Management and Budget and John Chafee, Secretary of Navy.

Orlando & Orlando, by Samuel P. Orlando, Haddonfield, N. J., and Albert J. Persichetti, Deputy City Sol. for Municipality of Philadelphia, of counsel, for defendant Municipality.

Mario A. Iavicoli, for Speaker of New Jersey General Assembly, amicus curiae.

## OPINION

COHEN, District Judge:

This attack upon taxes levied by the Municipality of Philadelphia and the Commonwealth of Pennsylvania, respectively, against non-residents employed therein was initiated with the convocation of a three-judge district court, pursuant to 28 U.S.C. § 2281. Under consideration before that statutory court were the Wage and Net Profits Tax

Ordinance of the City of Philadelphia,[1] the Pennsylvania State Income Tax[2] and the Executive Regulations[3] of the Philadelphia Naval Shipyard, a Federal reservation, the enforcement of which was sought to be enjoined and declared unconstitutional in their application to the plaintiffs and the classes which they purport to represent.[4]

Federal jurisdiction was invoked under various sections of Title 28 U.S.C., alleging diversity of citizenship and jurisdictional amount (section 1332); a federal question (section 1331); a deprivation of civil rights (section 1343); an action arising under Executive Regulations involving damages less than $10,000 (section 1346(2)); the Declaratory Judgment Act (section 2201); and injunctive relief (sections 2281 and 2284).

All defendants moved for a dismissal of the complaint contending that jurisdiction is lacking over the persons; that a statutory prohibition bars the enjoining of state taxes, 28 U.S.C. § 1341; that the complaint fails to state a cause of action upon which relief can be granted; and that improper venue is laid.

After these issues were briefed and argued orally before that court, the motions of the defendants Commonwealth of Pennsylvania and the Honorable Milton Shapp, Governor, for dissolution of the court and for dismissal of the complaint as to them were granted for the reasons stated in the opinion of that court filed contemporaneously herewith. The motions by the remaining defendants were referred to the initiating district judge for his disposition, inasmuch as it was the determination of the three-judge court that jurisdiction in these regards was lacking.

In support of its motion to dismiss the complaint, the defendant Municipality of Philadelphia relies primarily upon the Johnson Act,[5] 28 U.S.C. § 1341, which provides that:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law *where a plain, speedy and efficient remedy may be had in the courts of such State.*" (Emphasis added.)

Philadelphia argues that an expeditious and fully adequate remedy exists administratively in its Courts and, as well, in those of the Commonwealth of Pennsylvania. It refers to the Philadelphia Code Section 19–1500 (1963), which provides that any person desiring to challenge a tax assessment, or seeking refund of taxes paid, may petition the Philadelphia Tax Review Board, with a right to appeal an adverse decision to courts of competent jurisdiction.

The plaintiffs, the Non-Resident Taxpayers Association and the class which it purports to represent under Fed.R.Civ.P. 23 and Fanelli, Nole, Straub, DiFilippo, Candara and Silverstein, non-resident employees of the Philadelphia Naval Shipyard, suing for themselves and others similarly situated, seek, in essence, to have the applicability of the Philadelphia Wage and Net Profits Tax Ordinance declared unconstitutional

---

1. Philadelphia, Pa., Code § 19–1500 (1963).

2. Pa.Stat.Ann. tit. 72 § 7308 (1971).

3. These regulations: (1) Circular No. A–38 of the Executive Office of the President, Office of Management and Budget, authorizes the submission of W–2 and 1099 wage forms of federal employees to the City of Philadelphia; and (2) Naval Joint Instruction 12750.2B provides for the discipline of federal employees who fail to honor just debts without good cause.

4. These purported class actions are brought pursuant to Fed.R.Civ.P. 23.

5. The Johnson Act, originally adopted in 1937, severely curtailed federal jurisdiction of actions to enjoin the assessment, levy or collection of any tax imposed by or pursuant to state law where a plain, speedy and efficient remedy was available in the state courts. In 1948, the Act was revised by the deletion of the phrase "imposed by or pursuant to the laws of any State" as being too wordy and to substitute therefor "under state law," but continuing its application to subdivisions of a state. See Reviser's Note 28 U.S.C.A. § 1341 and 13 A.L.R. 2d, III § 5, n. 4.

with respect to persons employed in Philadelphia but residing elsewhere; to enjoin the withholding of any such tax; and directing a refund of taxes improperly paid by such non-residents. Alternatively, they demand a realistic apportionment of taxes imposed with relation to lesser benefits derived by such non-residents, as contrasted to those bestowed upon resident taxpayers.

In resisting Philadelphia's motion to dismiss, the plaintiffs argue that the alleged "plain, speedy and efficient remedy" asserted by the Municipality is illusory at best by reason of the Pennsylvania Supreme Court's decision in Kiker v. City of Philadelphia, 346 Pa. 624, 31 A.2d 289 (1943), cert. denied 320 U.S. 741, 64 S.Ct. 41, 88 L.Ed. 439 (1943), and by the federal case of Application of Thompson, 157 F.Supp. 93 (E.D.Pa. 1957) aff'd 258 F.2d 320 (3 Cir. 1958), cert. denied 358 U.S. 931, 79 S.Ct. 317, 3 L.Ed.2d 303 (1959); these cases, they contend, would in effect render such a pursuit for taxpayer relief entirely futile. Plaintiffs insist that they do not seek to enjoin the taxes in general but rather to limit the collection of such local taxes to Philadelphia residents. They claim, further, that there are considerable decisional authorities [6] to the effect that suits for refunds do not fall within the prohibition of 28 U.S.C. § 1341. The remaining arguments of the plaintiffs, generally, are that the Philadelphia Tax Ordinance, as applied to non-resident taxpayers, is violative of due process, of equal protection of the laws, of the privileges and immunities clause of the Fourteenth Amendment, of their civil rights, and imposes an undue burden upon interstate commerce in violation of the Commerce clause.

The Philadelphia Wage and Net Profits Tax Ordinance has been construed to be constitutional in its application to non-resident persons who derive income from within the geographical limits of the Muncipality of Philadelphia. Kiker v. City of Philadelphia, supra, at page 624 of 346 Pa. at page 297 of 31 A.2d; Application of Thompson, supra, at page 98 of 157 F.Supp. In Kiker, it was determined as well, that federal employees at the Philadelphia Naval Shipyard at League Island [7] were subject to the Philadelphia Wage Tax Ordinance, even though some of the employees used a ferry boat to cross the Delaware River from its east bank on the New Jersey shore to the west bank of the river at the shipyard, never setting foot in Philadelphia during the course of their employment. And the same argument made here regarding the apportionment of taxes without equally related benefits was also refuted.[8] The identical conclusion was reached in Thompson, some 14 years later, by the United States District Court for the Eastern District of Pennsylvania. There, a delinquent, non-resident taxpayer was arrested by Philadelphia authorities at his place of employment in the Naval Shipyard; thereafter, he sought release by habeas corpus proceedings challenging the constitutionality of the tax as applied to him. The validity of the tax was sustained and his petition for release denied.

6. See: Central Steel & Wire Co. v. City of Detroit, 99 F.Supp. 639 (E.D.Mich.), reh. denied, 101 F.Supp. 470 (1951); Denton v. Carrollton, 235 F.2d 481 (5 Cir. 1956); Rico Argentine Mining Co. v. Board of County Comm'rs, 215 F. Supp. 208 (D.Colo.1963); Louisville & N. R. R. Co. v. Public Service Comm., 249 F.Supp. 894 (M.D.Tenn.1966); Southland Mall, Inc. v. Garner, 293 F. Supp. 1370 (W.D.Tenn.1968).

7. League Island lies on the west bank of the Delaware River, just above the mouth of the Schuylkill River and within the bounds of the City of Philadelphia.

The land was ceded by Philadelphia and the Commonwealth of Pennslyvania to the Federal Government before the turn of this century. Philadelphia did not reserve the right to tax at that time. Some six years after the passage of the Philadelphia Wage Tax, Congress passed the Buck Act by which it receded jurisdiction to the City to impose taxes upon employees within this federal area. 4 U.S.C. § 106 (1947).

8. To like effect see American Commuters Assoc. v. Levitt, 279 F.Supp. 40 (S.D. N.Y.1967).

In both *Kiker*, an opinion by the Pennsylvania Supreme Court, and *Thompson*, an opinion by our Federal Court of Appeals, the constitutional application of income taxes upon non-residents was upheld and in each instance the United States Supreme Court denied *certiorari*.

We appreciate the impasse which seems to confront the plaintiffs when faced with these two authorities. Plaintiffs seek to bypass them, arguing that resort to the Pennsylvania Courts would be an expensive and needlessly time-consuming exercise in futility, so that relief if sought at all must be had in the federal courts. Careful consideration has been given to *Kiker* and *Thompson* and it should be observed that many of the constitutional issues raised here were not posed there. No matter how reluctant we may be to judicially assess a sovereign's tax laws, or one of its duly authorized subdivisions, we must be mindful of the admonition in Zwickler v. Koota, 389 U.S. 241, 251, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967), that federal district courts cannot order abstention ". . . . simply to give state courts the first opportunity to vindicate the federal claim." The ordinance in question is not of an uncertain nature nor is it obviously susceptible of the limiting construction ascribed to it by the non-resident plaintiffs. Harman v. Forssenius, 380 U.S. 528, 534–537, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). We are confronted with a clear and unambiguous local ordinance and federal regulations that allegedly impair the fundamental constitutional and civil rights of a broad class of citizens; the immediacy of the problem is evident and the plaintiffs request declaratory relief. Aside from any consideration of injunctive relief, " . . . a federal district court has the duty to decide the appropriateness and merits of the declaratory request . . . ." *Zwickler, supra,* at page 254, 88 S.Ct. at page 399.

■ Consequently, this court is compelled to determine the federal claims raised by the plaintiffs. In so doing, we find that all but the civil rights contention were laid to rest in the early cases of Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445 (1920) and Travis v. Yale & Towne Mfg. Co., 252 U.S. 60, 40 S.Ct. 228, 64 L.Ed. 460 (1920). In *Shaffer,* an Oklahoma State Income Tax, and in *Travis,* a New York State Income Tax, as applied to non-residents, were involved. The court in *Shaffer* ruled that a state income tax (here, a local income tax), which was levied upon resident and non-resident taxpayers alike, was not violative of non-residents' rights of due process, equal protection, privilege and immunities, and did not burden interstate commerce. This court is constrained to reach a like conclusion in the instant case.

■ The civil rights violation asserted by the plaintiffs is equally without merit. As stated in Gray v. Morgan, 371 F.2d 172, 175 (7 Cir. 1966), cert. denied 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 596 (1967), which involved a challenge by non-residents to the Wisconsin income tax statutes, " . . . . the attempt to assert civil rights jurisdiction under § 1343 as somehow superior to the doctrine of federal abstention [§ 1341] in order to escape the payment of a state income tax [or city income tax] under the circumstances of this case, must fail." Here, as in *Gray,* no claim is made regarding a denial of due process respecting the method of assessing or collecting the tax—they challenge the validity of the tax itself as applied to them; they seek to escape from the payment of the tax rather than secure a declaration of their rights to enjoy certain civil liberties. And although the tax measure in the instant case involves a municipal ordinance, as distinguished from a state statute, we are compelled as the court was in *Gray* to follow the decision of the three-judge court in Abernathy v. Carpenter, 208 F.Supp. 793 (W.D.Mo.1962), aff'd per curiam by the United States Supreme Court, 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963). The district court, there, held that an action by non-residents to enjoin collection of certain state income taxes was not within

the civil rights jurisdiction and that, as well, the court was barred by the injunction proscription of § 1341. *A fortiori,* is this single judge court foreclosed in these regards.

The authorities [9] cited by plaintiffs are inapposite, uncontrolling and do not lead to a different result. These cases involved suits for refund of taxes where recoupment appeared doubtful or for alleged illegal overassessment of taxes and relied principally upon Central Steel & Wire Co. v. City of Detroit, 99 F.Supp. 639 (E.D.Mich.1951), reh. denied 101 F.Supp. 470 (1951), as authority for their rationale. Examination of *Central Steel* reveals that the tax in question was levied as a single *ad valorem* assessment. In granting the relief demanded—a refund of taxes arbitrarily overassessed—the court required only a reassessment of the property base of the tax, but did not impair its proper collection. The taxing schemes of the cases that followed *Central Steel* involved, for the most part, single assessment *ad valorem* taxes. In contradistinction, the instant case does not deal with the assessment and taxation of property, but rather with a local income tax. To grant a refund of taxes paid would, in effect, enjoin or restrain the future collection of such taxes from the classes represented by the plaintiffs. It would be foolhardy for the Municipality of Philadelphia to collect this tax if it must immediately grant a refund. The Johnson Act, section 1341, *supra,* does not countenance such procedure.

As was stated in the three-judge court opinion, plaintiffs seek to "limit the source" from which the tax may be collected, rather than to enjoin its operation. In this latter regard, they rely upon Director of Revenue, State of Colorado v. United States, 392 F.2d 307 (10 Cir. 1968). In so doing, they distort the "source of tax" concept, as employed in *Colorado.* In that case, a determination was made regarding the priority of tax liens between an agency of the United States and the State of Colorado. It

was held that the Johnson Act was inapplicable because the United States merely sought to have the Colorado tax subordinated to its prior valid lien and not to suspend its collection indefinitely. Here, there is no question of priority of tax liens on property. Instead, the plaintiff-taxpayers seek to exempt themselves permanently from the reach of personal tax liability. They do not seek temporarily to confine the collection of taxes to a particular physical property or chattel, as in *Colorado.* The approach which they urge would amount to an impermissible circumvention of the Johnson Act.

■ There remains for disposition that portion of the complaint directed against the United States Government and its representatives regarding Executive Regulations Circular No. A–38 and Naval Joint Instruction 12750.2B. Under Circular No. A–38, informational wage reports are made available to Philadelphia. Plaintiffs seek to curtail such reporting. Their attack upon this regulation is that it unconstitutionally effectuates a denial of their right to equal protection of laws, constitutes a taking of property without due process and results in an improper invasion of their right of privacy. Obviously, the Government acting through its official personnel at the Naval Shipyard is not taking property without due process by supplying information regarding wages earned by employees at the yard. It is but a reasonable exercise of employer responsibility. With respect to privacy of financial affairs, these federal employees have no greater right than others whose employers are obliged to make known the amount of wages earned by employees subject to a valid taxing authority. Application of Thompson, *supra,* citing at page 98 the Buck Act, 4 U.S.C. § 106. The Executive Regulation under attack cannot be violative of plaintiffs' constitutional rights, since it is merely a reasonable reporting scheme to an authority, the Municipality of Philadelphia, which has a right to know the matters

9. See n. 6, *supra.*

about which inquiry has been made. Even if the tax in question were found to be illegal, it would not follow that this reporting regulation would be invalid *per se*.[10]

So, too, with Naval Joint Instruction 12750.2B providing for discipline of delinquent shipyard taxpayers by suspension or removal. This regulation is a reasonable and necessary exercise of executive authority over internal discipline in order to promote and to maintain the efficiency and image of the Naval Service which, it should be observed, is an essential arm of the National Government. These employees overlook one of the obligations imposed by their employment on a Federal Reservation, namely, payment of just debts, particularly taxes. Application of Thompson, *supra*. The pertinent federal regulation, 5 C.F.R. 735.207 (1971), provides:

> "Indebtedness: An employee shall pay each just financial obligation in a proper and timely manner, *especially one imposed by law such as Federal, State, or local taxes*. For the purpose of this section, a 'just financial obligation' means one acknowledged by the employee or reduced to judgment by a court, and 'in a proper and timely manner' means in a manner which the agency determines does not, under the circumstances, reflect adversely on the Government as his employer. In the event of dispute between an employee and an alleged creditor, this section does not require an agency to determine the validity or amount of the disputed debt." (Emphasis added.)

While it is true, as argued by plaintiffs, that taxes yet to be collected by the Municipality of Philadelphia are not a "just financial obligation," as defined in the Code of Federal Regulations, because neither "acknowledged by the employee or reduced to judgment by a court," nevertheless, we may assume that federal agencies do not arbitrarily employ disciplinary proceedings. If they do, a wrong may be corrected by resort to legal pro-

ceedings. Administrative action is not pursued until the financial obligation of the employee is imposed by orderly collection procedures, which may very well include a judgment for the amount of taxes due, where the employee refuses to acknowledge the validity of the tax obligation. Discipline only follows fault; every opportunity is afforded to an employee to contest an alleged just financial obligation or to remedy his default when it has in fact been established. See Administrative Procedure Act, 5 U.S.C. § 500 et seq.

The challenged Naval Instruction providing for discipline and Circular No. A–38 authorizing submission of wage reports were promulgated pursuant to 5 U.S.C. § 301, whereby Executive departmental heads may prescribe regulations for their respective employees, such as has been done in the instant case. This statute does not, however, "authorize withholding information from the public or limiting the availability of records to the public." Moreover, unless such regulations are clearly inconsistent with the purpose of the statute, they have the force and effect of law. Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297 (1920); Tasker v. U. S., 178 Ct.Cl. 56 (1967); G. L. Christian & Associates v. U. S., 320 F.2d 345 (Ct.Cl.1963), cert. denied 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963), reh. denied 377 U.S. 1010, 84 S.Ct. 1906, 12 L.Ed.2d 1059 (1964).

In strenuously pressing their broadest challenge to the constitutionality of the Government's Executive Regulations, the plaintiffs stress that however salutory the purpose of these requirements might be, nevertheless, they unconstitutionally impress a "prior restraint" by the establishment of a "pay or else" condition, unrelated to their employment contracts, and thereby restrict freedom of movement to and from their place of employment; further, that this unreasonable condition is so disruptive of their employment as to constitute a "chilling ef-

---

10. Presumably, the Government would discontinue the reporting scheme in such an event.

fect" upon their First Amendment right to freedom of speech, in this instance, articulated as a right to protest and refuse payment of the Philadelphia wage tax.

In advancing this circumvolution of the First Amendment, plaintiffs confuse constitutionally permissible regulation of non-communicative conduct with unconstitutional suppression of free speech. This very distinction between conduct and speech was disentangled from the First Amendment protection in United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In *O'Brien*, it was urged that "symbolic speech" was within the protection of the First Amendment, thereby absolving a draft-protestor from prosecution for publicly destroying his draft card as his symbolic objection to the war and the draft. In refusing to accept this proposition the Supreme Court, speaking through then Chief Justice Warren, said:

> "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea . . . . This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." (Id. at 376, 88 S.Ct. at 1678).

"To characterize the quality of governmental interest which must appear" to justify governmental regulation in the conduct or "symbolic speech" situations, the Court set down certain tests in *O'Brien*:

> "[W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (Id. at 377, 88 S.Ct. at 1679.)

Plaintiffs' attack upon the validity of the governmental regulations in question, charging an infringement upon their First Amendment rights, must fall in light of the tests set down in *O'Brien*, which justify such regulations. Here, plaintiffs' conduct demonstrates a combination of "symbolic speech" (protest and refusal to pay the taxes in question) and noncommunicative conduct (tax delinquency and exposure to discipline and civil penalties) and involves, if at all, only an incidental and insignificant impairment of First Amendment freedoms;[11] such an inhibiting effect must give way to a significantly more important governmental interest in regulating that conduct, i. e., reporting wages to a taxing authority and disciplining recalcitrant or delinquent federal employees, which is unrelated to any suppression of free speech. Balancing the respective interests, the Government must prevail; little or no hardship is inflicted upon plaintiffs. A contrary conclusion would tend to countenance almost any variety of "symbolic speech" as being within the protection of the First Amendment and would foster civil disobedience. Surely, the First Amendment cannot be judicially expanded to support such a construction.

In conclusion, it seems appropriate to note that we all must realistically relate to a tax-oriented Society. Taxing authorities cannot accommodate every individual by personalizing tax formulas, as might be accomplished with philosophy, religion and politics. Just as industry and business select sites providing favorable tax consequences, so too with an individual in his selection of his place of employment. As stated in *Shaffer, supra*:

> "That the State [and a duly authorized subdivision], from whose laws property and business and industry

11. Younger v. Harris, 401 U.S. 37, 51, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) by

Mr. Justice Black, since deceased, a great champion of First Amendment rights.

derive the protection and security without which production and gainful occupation would be impossible, is debarred from exacting a share of those gains in the form of income taxes for the support of the government, is a proposition so wholly inconsistent with fundamental principles as to be refuted by its mere statement."

\* \* \* \* \* \*

"Income taxes are a recognized method of distributing the burdens of government, favored because requiring contributions from those who realize current pecuniary benefits under the protection of the government, and because the tax may be readily proportioned to their ability to pay." (252 U.S. at pp. 50–51, 40 S.Ct. at p. 225, 64 L.Ed. 445).

In accordance with the views expressed herein, the motions of the defendants, the Municipality of Philadelphia and Thomas Rodgers, and the United States Government, George Schultz and John Chafee, for a dismissal of the complaint shall be granted.

Appropriate orders, by the Court, shall be filed herewith.